NICHOLAS A. TRUTANICH
United States Attorney
District of Nevada
Nevada Bar No. 13644
STEVEN W. MYHRE
Assistant United States Attorney
District of Nevada
Nevada Bar No. 9635
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
PHONE: (702) 388-6336
FAX: (702) 388-6698
Steven.Myhre@usdoj.gov

*Attorneys for the United States*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) **Case No. 2:19-mj-847-BNW** |
| | ) |
| v. | ) |
| | ) **GOVERNMENT'S MEMORANDUM IN** |
| LATONIA SMITH, | ) **SUPPORT OF ITS MOTION FOR** |
| | ) **PRETRIAL DETENTION** |
| Defendant. | ) |
| | ) |
| | ) |

The United States, by and through undersigned, respectfully submits this Memorandum in Support of its Motion for Pretrial Detention pursuant to The Bail Reform Act, Title 18, United States Code, Section 3142. As explained herein, the government seeks the continued pretrial detention of defendant Latonia Smith ("Smith") both as a risk of non-appearance and as a danger to the safety of others and the community.

Smith is charged by Complaint with violations of Title 18, United States Code, Sections, 876 (Mailing Threatening Communications) and 924(c) (Use and Carry of a Firearm in Relation to a Crime of Violence). For reasons explained below, the government is not relying upon the Section 924(c) charge (*see infra* page 9, fn.1) – which carries with it a

1

presumption of danger to the community – and seeks detention on the basis of the Section 876 charge alone, which carries with it a maximum sentence of ten-years' imprisonment and is a crime of violence. Accordingly, the government may properly seek detention under Section 3142(f)(1).

As shown below, Smith's conduct toward her victims has escalated generally over time, but most especially toward one victim in particular: Mr. Wade Beavers, the victim named in the Criminal Complaint and an attorney representing Caesars Entertainment and Planet Hollywood in connection with civil litigation with Ms. Smith and Ms. Smith's mother. As shown below, Smith attacked him in his home with a dangerous weapon on October 31, 2019.  His personal safety concerns alone dictate detention.

But there is much more at play here. As shown below, Ms. Smith has leveled death threats against others aside from Mr. Beavers and has shown little regard for the courts, for judges, or for legal process as those victims attempted to obtain civil protective order against her. She is unlikely to exhibit any respect for the law or the courts in the future. Further, she has threatened to take her own life, adding further to her risk of non-appearance and making her a danger to herself.

At base, her release depends on her willingness to comply with term and conditions set by this Court. Her words and actions to date demonstrate that she is incapable of doing so.  Accordingly, she should be detained.

## FACTS

At the detention hearing, the Court may properly rely upon a proffer by counsel in determining a defendant's danger to the community or risk of flight. *See United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986) ("[T]he government may proceed in a detention hearing by proffer or hearsay.")  Accordingly, in addition to the information provided

below, the government proffers Exhibits 1 through 4 and the facts contained in the Complaint.  The following timeline is submitted to provide the Court with a basic chronology of events.  This chronology is constructed in the main from the Complaint, court documents found in the public record, the principal one being found at Exhibit 1 (an excerpt from an application for protective order filed in Washoe County), information obtained from the investigation to date, and from victim statements received by the USAO found at Exhibits 2 through 4.

- **November 2017**:  Samantha Radak terminated Ms. Annecer Peruzar's employment with Planet Hollywood.
- **December 7, 2017**: Ms. Radak receives communication of unknown origin through Facebook, stating, among other things, that Ms. Radak is a racist.
- **December 22, 2017**:  Ms. Radak receives another communication of unknown origin through Facebook, accusing her of being a racist.
- **March 8, 2018**: Ms. Radak receives another communication of unknown origin through Facebook, stating that she (Radak) is easy to find and concluding the message with "Dumb bitch; in life you only live because others allow you to."
- **August 11, 2018:**  Ms. Radak receives a letter of unknown origin, stating, among other things, "you don't deserve the air you breath . . . .fix your ways and actions or you will all die . . . Racist Motherfuckers . . . All will regret . . . real threat . . ."
- **November 5, 2018**: Ms. Peruzar initiates lawsuit against Caesars Entertainment and Planet Hollywood. Fennemore Craig attorneys Shannon Pierce ("Ms. Pierce") and Wade Beavers ("Mr. Beavers") appear in the litigations on behalf of Caesars and Planet Hollywood.
-  **April 17, 2019**: Smith confronts Ms. Pierce following court hearing in case, threatening to "fuck up" Ms. Pierce and punch her in the face.

- **April 18, 2019**: Ms. Pierce applies for and receives a Temporary Protective Order ("TPO") against Ms. Smith.
- **April 25, 2019**: Mr. Beavers and Shawna Braselton (a Legal Assistant with Fennemore Craig) each receive 2 letters of unknown origin in a single envelope, the letters stating, among other things, "congratulations you have just been added to the hit list . . .congratulations on your wedding Shawna hopefully you'll be around to enjoy it. . . no one will be safe keep it up sick bastards . . . 6 feet under or burned . . . embodying the rage of all mass murderers . . .it will just be lights out. . . .
- **May 1, 2019:** Nevada state court issues TPO against Ms. Smith in favor of Ms. Braselton and Mr. Beavers based on threatening communications they received.
- **May 3, 2019:** Ms. Smith files two civil actions, one against Fennemore Craig and the other against Ms. Pierce and others, alleging that defamatory and racist comments were made against *her* and that the TPO was improperly sought against her. Cases are later removed to federal court and assigned to United State Magistrate Judges Youchah and Koppe, respectively.
- **June 4, 2019**: State court conducts hearing on May TPO to determine whether to extend the TPO against Ms. Smith. Proceedings continued.
- **June 11, 2019**: United States Postal Inspectors visit Ms. Smith at her home and identify themselves. The Postal Inspectors inform Ms. Smith of the threatening communications sent via letters, explain that it is a violation of law, and tell her to cease and desist. Ms. Smith states that she did not send any threatening communications.
- **July 30, 2019**: Following a hearing in state court in Reno, the TPO against Ms. Smith is not extended based on no contact between Smith and Mr. Beavers or Ms. Braselton.
- **September 9, 2019:** Smith files in state court for a TPO against Mr. Beavers, alleging that he assaulted her following the June 4 hearing on the TPO. Mr.

Beavers, who was accompanied by others the entire time of the June 4 hearing, denies allegations. Ms. Smith did not make allegations of assault against Mr. Beavers when Postal Inspectors interviewed her on June 11 or during the July 30 hearing on the TPO.

- **September 25, 2019:** United States Magistrate Judge Youchah conducts hearing in Fennemor Craig civil action in federal court, finding that Ms. Smith made "highy unusual allegations of improper conduct by Fennemore counsel during the course of state court litigation," and orders a stay of discovery in the litigation.

- **September 30, 2019:** Ms. Pierce and Tyre Gray (also an attorney with Fennemore Craig) each received letters of unknown origin – one in Reno, the other in Las Vegas -- containing death threats, including the words: "your throat will be slit . . . three bullets will be paced right through your skull . . . the marks of your dried tears will be left with your bloodied brain splattered across the floor . . . you will suffer and die for your sins . . . ."

- **October 1, 2019:** Jean Wirthlin receives the same death threat letters at her home in Las Vegas, apparently directed at Ms. Wirthlin's husband, an attorney with Fennemore Craig.

- **October 8, 2019:** Hearing conducted in Las Vegas Justice Court to vacate the Smith TPO against Mr. Beavers. Court rules against Smith and makes adverse credibility determination against her.

- **October 15, 2019:** Ms. Smith files motions to vacate Magistrate Judge Youchah's Order and to Lift the Stay in Fennemore civil case, accusing the Court of being "incredibly naïve and/or just completely ignorant" and "aiding defendants."

- **October 15, 2019:** Ms. Smith files documents with Court appealing an Order from Magistrate Judge Koppe's Order in the Pierce civil case, stating, among other things, that her "patience with this Court is wearing thin" and that she "will be filing a writ next (eye roll)."

- **October 17, 2019:** United States Magistrate Judge Koppe grants defendant's Motion to Stay Discovery in the Pierce civil suit.
- **October 21, 2019:** Ms. Smith files another civil action in Nevada State Court against Mr. Beavers, again claiming that she was assaulted by Mr. Beavers on June 4, 2019. In the pleading, Ms. Smith writes in the caption: "NOT TO ASSIGN TO A WHITE JUDGE IF POSSIBLE (THEY ARE INHERENTLY BIASED/RACIST AGAINST MINORITIES AND IT IS JUST PART OF THEIR PSYCHOLOGICAL MAKEUP AND TRAINING; THANK YOU)" and, within the pleading, refers to another judge as "racist."
- **October 26, 2019:** In response to Magistrate Judge Koppe's ruling, Ms. Smith files a pleading containing hate-filled rhetoric, accusing the Court of "actively assisting defendant" and stating that the judiciary needs to get "their heads from out of their own piss filled toilets" adding that she is "highly sick of you old, out-of-touch, racist, pathetic white judges," referring to Judge Koppe as "ignoble" "corrupt" and "mentally incapable of being impartial and handicapped by the same white supremacist mentality held by vile whites in this country." She further referred to the Court as a "KKK Kangaroo Court and concluded by stating that "you are all full of shit."
- **October 28, 2019:** Order of the Justice Court of October 8, 2019 entered on the public record, vacating the Smith TPO against Mr. Beavers and containing adverse credibility determination against Ms. Smith, stating that Smith withheld critical information from the Court and that evidence submitted by Mr. Beavers discredits Mr. Smith's application.
- **October 31, 2019:** Smith travels to Reno to confront Mr. Beavers in his apartment, forcing her way into his apartment, knocking him to the ground, pointing what appears to be a Glock 17 at him as he lay on the floor. Smith, in a calm voice states words to the effect of "we need to chat." Mr. Beavers forces his way out of his own apartment, flees, and contacts the Reno Police

Department by contacting 911. When police arrive they do not find Ms. Smith. Arrest Warrant issues for Ms. Smith from RPD.

- **November 1, 2019:** Metro police locate Ms. Smith in her home in Las Vegas and wait outside her house in anticipation of federal arrest warrant. When Ms. Smith learns of police presence, she barricades herself inside the home and threatens suicide. Standoff occurs until negotiations result in surrender. Ms. Smith is arrested pursuant to federal Complaint and Arrest Warrant.

- **November 1, 2019:** During search of Ms. Smith's residence, officers recover replica Glock 17 pellet gun, matching description of weapon that was used during the assault on Mr. Beavers.

- **November 4, 2019:** Ms. Smith escorted from City of Henderson jail to United States District Court for initial appearance. Ms. Smith attempts to commit suicide while in Marshal's custody and is transported to UMC for evaluation. Upon return to Henderson jail, she refuses to cooperate and force is used to return her to cell.

## LEGAL STANDARD

The Bail Reform Act provides that a judicial officer shall detain a defendant pending trial where "no conditions or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Detention is appropriate where a defendant poses either a danger to the community or a risk of non-appearance and it is not necessary to prove both. *See United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

The Government must establish by clear and convincing evidence that the defendant presents a danger to the community and by a preponderance of the evidence that the defendant is a risk of non-appearance. *Id.* In determining whether pretrial detention is appropriate, Section 3142 provides four factors for the Court to consider: (1) the nature and

circumstances of the offense charged, including whether the offense charged is a crime of violence; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger posed by the defendant's release. *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990); 18 U.S.C. § 3142(g).

At the detention hearing, the Court may properly rely upon a proffer by counsel in determining a defendant's danger to the community or risk of flight. *See United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986) ("'[T]he government may proceed in a detention hearing by proffer or hearsay.")

Crimes of violence for purposes of the Bail Reform Act include any offense that has as "an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another," and is a felony that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." See 18 U.S.C. § 3156(a)(4)(A).

## ARGUMENT

Smith presents both a risk of non-appearance and a danger to the community. The alleged threats are acts of violence seemingly triggered by events associated with everyday occurrences in the civil justice system. It is reasonable to assume that the civil litigation involving her mother's employment dispute is likely to continue for some time. If Ms. Smith is released, the lawyers and support staff involved in the litigation will have to walk in constant fear while they await the next death threat or unprovoked assault, triggered by nothing more than a simple innocuous filing or ruling by a court.

Ms. Smith has shown that she will act out on her threats and has used actual force and violence. She cannot be trusted **not** to do so in the future. She showed up unannounced

and uninvited to Mr. Beavers personal living quarters on Holloween. He answered the doorbell expecting trick-or-treaters and was instead met with Smith, brandishing a dangerous weapon.[1] Mr. Beavers fell to the floor as she forced her way into the apartment, pointed the dangerous weapon at him, coldly saying "we need to chat."   Mr. Beavers did nothing to provoke this attack -- she appears to act out of obsession, evidenced by her leveling of false accusations against him in public filings and the most-recent violent encounter with a dangerous weapon, Mr. Beavers having had only a few brief interactions with her in the past, all in the context of litigation. There is no reason to believe that her threat to him will be at all mitigated by terms and conditions of release, including a half-way house or GPS monitoring.  Ms. Smith has shown that she will use her freedom to assault and threaten others.

The chronology of events depicted above also shows that she has no respect for law or law enforcement. She was confronted by law enforcement in June 2019 and instructed to cease and desist from sending threatening communications. Rather than take this as an opportunity to change her ways, she denied any involvement, blamed others and continued with her conduct, escalating the rhetoric and leveling death threats at others.

Her victims obtained civil legal process against her in the form of TPO's.   She was undeterred, sending more death threats and using force and violence against her victims.

When she received ruling adverse to her in court proceedings, she unleashed a torrent of hate-filled rhetoric, showing complete lack of respect for judicial authority, and acted out against her victims. There simply is no reason to believe that she will have any

---

[1] The weapon recovered from Ms. Smith's residence pursuant to a search warrant appears to be a functioning CO-2 pellet gun designed to replicate a Glock 17 handgun.  As this is the only weapon recovered thus far in the investigation, the government will not, at this time, pursue detention based on a presumption afforded a violation of Title 18, United States Code, Section 924(c) (*see* Section 3142(e)(3)(b)), inasmuch as a pellet gun is not a "firearm" within the meaning of that statute.  The investigation, however, continues.

9

respect for, or abide by, any orders from this Court, including an order setting terms and conditions for release.

Given this history, her victims remain in fear, which fear will continue and increase if she is released. The following are brief excerpts from victim impact letters received by the USAO in connection with the present charges (*see* Exhibits 2 through 4):

> I have not returned to my apartment, and will not live there in the future. I question whether I will be able to live safely in the State in the future if/when Smith is free. . . . I do not know when this will end.  My only relief came when Smith was placed in custody. . . . If she is released, I do not know what I will do to create any feeling of safety for myself or the people around me.
> --*Wade Beavers* (Exhibit 2)

> I do not think I can put into words the toll that these threats have taken on me. My health has suffered because of the stress of living with these threats. Seemingly insignificant things such as leaving my office to go to my car have become frightening, as I have been in constant fear that Ms. Smith is lying in wait for me or others.
> --*Shannon Pierce* (Exhibit 3)

> When more letters were sent to my co-workers, with more death threats, my fear rose. Ms. Smith seems resourceful, and I felt she could, and would, follow through with her threats, especially after the Court began issuing orders in our favor . . . . Even knowing she is custody, I am checking <u>every hour</u> to make sure she hasn't been released. I am very concerned that once she is released, she will pick back up and again pursue, harass and/or attack those people, including myself, that she previously threatened. (emphasis in the original).
> --*Shawna Braselton* (Exhibit 4)

In sum, there are no conditions, or combination of conditions, that will ensure the safety of her victims or the community given Ms. Smioth's history of violence and her lack of respect for the courts, court orders, or judicial process.  At base, the Court would have to believe that it will succeed where other courts and law enforcement officers have failed, trusting that Ms. Smith would abide by orders not to break the law or have any contact or communications with her victims.  That lack of trust alone is sufficient to impose detention. *See United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (Noting that although the

defendant and pretrial services proposed "strict' conditions, "they contain[ed] one critical flaw. In order to be effective, they depend on [the defendant's] good faith compliance."); *see also Tortora*, 922 F.2d 880, 886 (1st Cir. 1990) (concluding that an extensive set of release conditions contained "an Achilles' heel ... virtually all of them hinge[d] on the defendant's good faith compliance").

In *Tortora*, an alleged member of a prominent mafia family stood trial for crimes under the racketing and organized crime statute. The First Circuit considered the elaborate conditions proposed that would restrict any communications with the defendant's cohorts. Ultimately, the court rejected those conditions, recognizing that "the conditions as a whole are flawed in that their success depends largely on the defendant's good faith-or lack of it. They can be too easily circumvented or manipulated." *Tortora*, 922 F.2d at 886.

This defendant also poses a significant risk of non-appearance as well. She was not compliant on November 1 when confronted by law enforcement, ultimately being forced to surrender. She threatened suicide on November 1 and attempted suicide before her scheduled initial appearance on November 4, necessitating the delay of her initial appearance until November 5. Further, there is an outstanding warrant for her arrest from the State of Nevada, arising from the assault with a dangerous weapon against Mr. Beavers. If released, she will likely be re-arrested.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the government has met its evidentiary burden of showing that Smith is a danger to the community and a poses a risk of non-appearance and that no conditions or combination of conditions will reasonably assure the safety of others or her appearance at future proceedings. Accordingly, the Government

respectfully requests that the Court enter an Order, detaining Ms. Smith pending trial of this matter.

**DATED** this 8th day November, 2019.

Respectfully submitted,

NICHOLAS A. TRUTANICH
United States Attorney

 /s/ Steven W. Myhre
_____
STEVEN W. MYHRE
Assistant United States Attorney
*Attorney for the United States*

# CERTIFICATE OF SERVICE

I certify that this pleading has been served upon opposing counsel via CM/ECF at the time of filing.

Dated: November 8, 2019

/s/ Steven W. Myhre
_____
STEVEN W. MYHRE
Assistant United States Attorney
District of Nevada