# EXHIBIT "4"

# EXHIBIT "4"

**FENNEMORE CRAIG**
ATTORNEYS

Shawna A. Braselton
Legal Administrative Assistant
sbraselton@fclaw.com

300 E. Second Street, Suite 1510
Reno, Nevada 89501
PH (775) 788-2202
fennemorecraig.com

November 6, 2019

Steven W. Myhre
U.S. Attorney's Office
501 Las Vegas Blvd South
Suite 1100
Las Vegas, NV 89101
Email: Steven.Myhre@usdoj.gov

    Re: Latonia Smith

Dear Mr. Myhre:

    My name is Shawna Braselton, and I am writing regarding Latonia Smith. I am a Legal Administrative Assistant at Fennemore Craig, P.C., and part of my job is assisting attorneys Shannon Pierce and Wade Beavers in various litigation matters.

    In December of 2018, I was filling in for Ms. Pierce's regular assistant when I was asked to call the Plaintiff in one of Ms. Pierce's active litigation matters to confirm an address. The Plaintiff had listed a nonexistent address on her Notice of Early Case Conference and the court reporter was having trouble locating it. I called the number listed on the caption of the pleading, and got the Plaintiff's daughter, Latonia Smith. Ms. Smith informed me that I needed to call her mother, and gave me that number. I spoke to the Plaintiff, identified myself and told her the reason I was calling was because the court reporter couldn't locate the address for the ECC. Plaintiff then gave me the correct address, which I forwarded on to the court reporter and Ms. Pierce.

    Within a few days of that phone call, Plaintiff filed a Motion for Sanctions, stating that she was unaware of the court reporter attending the ECC and that Ms. Pierce refused to attend for various reasons. Ms. Pierce asked that I complete an affidavit in support of the opposition to the motion regarding my conversation with Ms. Smith and her mother that day. My affidavit was attached to the opposition, along with affidavits from the court reporter, Ms. Pierce, and Tyre Gray (another Fennemore attorney in attendance that day).

    In April of 2019, I received an anonymous letter, addressed to myself and Mr. Beavers, which included three pages of threats of violence and death directed at me. The letter congratulated me on my wedding, and said something to the effect of me not being alive to see it. I immediately filed for a Temporary Protection Order against Ms. Smith. Because of my involvement in her mother's litigation against our client, I had knowledge of the various (and very similar) threats sent to our client's employees the previous year. Until the hearing on June 4, 2019 on extending the protection order, I lived in constant fear, both at my home and my office. I didn't like to be

**FENNEMORE CRAIG**

Steven W. Myhre
Re: Latonia Smith
November 6, 2019
Page 2

out in public, and because my fiancé is a local radio DJ, we spend a lot of time at concerts. I didn't attend a single concert for almost two months, simply out of fear for my safety.

Following the hearing to extend, and after seeing Ms. Smith for the first time in person, the fear did not subside. The Court ordered her to stay away from both myself and Mr. Beavers, and scheduled a hearing 30 days out to reevaluate the order. My counsel decided that filing an update with the court, explaining that no contact had been made my Ms. Smith and that we wouldn't oppose not extending the protection order, would be the best course of action. We filed the update, and the Court lifted the order at the hearing.

Two days following the hearing lifting the order of protection, I received subpoenas for both my deposition testimony, and access to my personal cell phone and personal computer from Ms. Smith in relation to the civil defamation lawsuit she had filed against my firm. At that point, the thought of being in a room with someone who had threatened to kill me, and giving her access to my personal cell phone, that contained personal information, made the fear return tenfold. Knowing how slowly the judicial process can move, all I could think about was how there was a very real possibility I would have to be deposed by Ms. Smith. I couldn't sleep, and couldn't focus.

When more letters were sent to my co-workers, with more death threats, my fear rose. Ms. Smith seems resourceful, and I felt she could, and would, follow through with her threats, especially after the Court began issuing orders in our favor, specifically granting the stay of discovery in late September.

On October 31, 2019 (Halloween), I received a phone call from my managing director, telling me that Mr. Beavers had been assaulted at his home with a gun by Ms. Smith. He asked that I get out of the house immediately and get to a hotel. I was alone in my house, upstairs taking a bath in my bathroom. The water had been running, and I knew that if someone was in the house, I wouldn't have heard them enter. I can't explain the sheer terror I felt at that moment, I had no idea whether or not Ms. Smith was in the house. I cracked open my door, and saw my two cats on the bed and felt momentary relief knowing that if someone were in fact in my house, my very anti-social cats would not be on the bed. That was my protection in that moment, two cats, until the Reno Police Department arrived to do an area search. I realized how vulnerable and unprotected I was in my own home. I was terrified for myself and Ms. Pierce, I was worried about Mr. Beavers, and no one knew where Ms. Smith was.

I had to pack really fast, and relocate to a hotel for an undetermined amount of time. I had to contact multiple family members to warn them of a potential threat from Ms. Smith. Once we arrived at the hotel, every knock on the door, every loud noise in the hallway, caused a fear that, again, I can't put into words.

**FENNEMORE CRAIG**

Steven W. Myhre
Re: Latonia Smith
November 6, 2019
Page 3

    Even knowing she is in custody, I am checking <u>every hour</u> to make sure she hasn't been released. I am very concerned that once she is released, she will pick back up and again pursue, harass and/or attack those people, including myself, that she previously threatened She very carefully and meticulously planned her attack on Mr. Beavers and I am truly terrified for the day when she is let out of jail. The people I work with every day are like a second family to me, and to think how close one of them was to dying, just for doing HIS JOB, is incredibly stressful.

    I cannot stress enough how important it is that Ms. Smith remain in custody. I feel she has just begun to escalate and is capable of following through on each and every threat she has made. Thank you.

Sincerely,

FENNEMORE CRAIG, P.C.

*[signature: S Braselton]*

Shawna A. Braselton